IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

REBECCA SANCHEZ, as parent and
guardian of minor child, L.S.,

        Plaintiff,

vs.                                No. CIV 04-134 LCS/RLP

ARTHUR R. BROKOP,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Arthur Brokop's Motion for

Judgment as a Matter of Law and for a New Trial or, in the alternative, Motion for Remittur and

to Alter or Amend Judgment [Docket #162] filed August 8, 2005.  The Court, acting upon

consent and designation pursuant to 28 U.S.C. § 636(c), and having reviewed the Motion and

considered the submissions of counsel, relevant authorities, and being otherwise fully advised,

finds that Defendant's Motion for Judgment as a Matter of Law or for Remittur is not well-taken

and should be **DENIED**.

### I.      Procedural History

This action arises out of the molestation of L.S., a minor, by Defendant Arthur Brokop.

On May 8, 2002, Arthur Brokop was acting as a substitute teacher for L.S.'s first-grade class at

Esperanza Elementary School in Farmington, New Mexico.  During the afternoon of May 8,

2002, Defendant Brokop molested L.S. and two other girls in her class.  Mr. Brokop was

removed as a substitute teacher from the Farmington Schools on May 15, 2002.  He pleaded

guilty and on November 26, 2002 was convicted of the crime of criminal sexual contact of a

minor.

Plaintiff, on behalf of her minor daughter, filed the present action in this Court on February 6, 2004, alleging violation of L.S.'s rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Following a jury trial, held on July 18-July 22, 2005, a verdict was returned in favor of Plaintiff, awarding $1,200,000 in compensatory damages and $2,000,000 in punitive damages. Judgment was entered in this amount for Plaintiff on July 29, 2005. [Docket #161].

## II.     Standard

**Judgment as a Matter of Law**

Judgment as a matter of law is only proper when "the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion." *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1110 (10th Cir. 2005) (quoting *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996)). In conducting its review, this Court must consider the record in its entirety and "draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). This Court may not "weigh the evidence, pass on the credibility of witnesses, or substitute [its] conclusions for that of the jury." *Id.* at 1111 (quoting *Minshall v. McGraw Hill Broad. Co.,* 323 F.3d 1273, 1279 (10th Cir. 2003)).

Plaintiff contends that Defendant failed to move for judgment as a matter of law at the conclusion of the evidence and has therefore waived his right to bring this Motion before the Court. FED. R. CIV. P. 50(a)(2) states that, "Motions for judgment as a matter of law may be made at any time before submission of the case to the jury." A review of the record reveals that

2

Defendant did move pursuant to Rule 50(a) during a bench conference following the close of Plaintiff's evidence.  This motion was denied.  Defendant's Motion for judgment as a matter of law or in the alternative for a new trial is therefore properly before this Court pursuant to Rule 50(b), which allows a movant to renew its request for judgment as a matter of law no later than ten (10) days after the entry of judgment.

### Motion for a New Trial

The denial of a motion for a new trial pursuant to FED. R. CIV. P. 59 will be reversed "only if the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Minshall*, 323 F.3d at 1283 (quoting *Weese v. Schukman*, 98 F.3d 542, 549 (10th Cir. 1996)).  When the issue of whether to grant a new trial "hinges on the admissibility of evidence," the reviewing court shall examine the "admission of the evidence for abuse of discretion." *Id.* (quoting *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1296 (10th Cir. 1998)).  If the evidence was erroneously admitted, the court may set aside a jury verdict only if the error prejudicially affects a substantial right of a party. *Id.*  Furthermore, evidence admitted in error can only be prejudicial if it can be reasonably concluded that without such evidence, there would have been a contrary result. *Id.*

### Motion for Remittur or to Alter or Amend Judgment

When an award of damages is so excessive that they could only be based on bias, passion or prejudice, remittur will be appropriate. *State Office Sys., Inc. v. Olivetti Corp. of America*, 762 F.2d 843, 847 (10th Cir. 1985).  However, the fixing of damages is "peculiarly a function of the jury" and its determination should not be overturned unless it is "grossly excessive." *Id.* (quoting *Rosen v. LTV Recreational Dev., Inc.*, 569 F.2d 1117, 1123 (10th Cir. 1978)).  The

question of the excessiveness of the verdict is a matter addressed "to the sound discretion of the trial court," and its determination should not be disturbed unless a "manifest abuse of discretion" is shown.  *Id.* (quoting *Edynak v. Atlantic Shipping, Inc. Cie. Chambon*, 562 F.2d 215, 226 (3rd Cir. 1977).

### Presumption of Correctness of Jury Verdicts

Defendant contends that the jury in the present case was unfairly aroused by passion and prejudice such that the verdict is suspect.  In my view, the jury in this case acted with a thorough and complete understanding of their duties, was conscientious in examining the evidence presented, and came to a reasonable verdict based on that evidence.

The Seventh Amendment to the United States Constitution provides in part:

> . . . [T]he right of trial by jury shall be preserved, and
> no fact tried by a jury, shall be otherwise reexamined
> in any Court of the United States, than according to the
> rules of the common law.  U.S. CONST. amend. VII.

Although this Court may overturn a jury verdict or remit a damages award, it must be remembered that this is an extraordinary remedy and should be used only when there has been a demonstration of "either confusion or abuse on the jury's part."  *Domann v. Vigil*, 261 F.3d 980, 983 (10th Cir. 2001) (quoting *Global Van Lines, Inc. v. Nebeker*, 541 F.2d 865, 868 (10th Cir. 1976)).  This is not such a case.

The Tenth Circuit has clearly stated that there is a presumption of correctness in jury verdicts. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) ("When a jury verdict is challenged on appeal, our review is limited to determining whether the record--viewed in the light most favorable to the prevailing party--contains

4

substantial evidence to support the jury's decision.")  It is the exclusive function of the jury to appraise the credibility of witnesses, to determine the weight to be given particular testimony, to draw inferences from the facts established, to resolve conflicts in the evidence, and to reach ultimate conclusions of fact.  *United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000).  The Tenth Circuit has stated that it will not usurp these functions or in any way substitute its judgment for that of the jury.  *Id.*  Even when there appears to be an inconsistency in the verdict, the Court has held that it, "must accept *any* reasonable explanation that reconciles the jury's verdict."  *Domann*, 261 F.3d at 983 (quoting *Hemo v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 852 (10th Cir. 2000)) (emphasis added).

In thirty-four years as a trial lawyer and a trial judge I have gained the highest respect for juries and the work they do.  I have learned, for example, when six or eight or twelve people are selected at random from diverse backgrounds, ethnicities, races, creeds, occupations, ages and educations, that that body's intelligence and perception is heightened exponentially.  The results have been just without exclusion in my experience.  The old New Mexico case of *James v. Hood*, 19 N.M. 234, 142 P. 162, 163 (1914) sets out the common law test clearly:

> The weight of the evidence may properly be considered
> by the trial judge in passing on the motion for a new
> trial, where it is properly called to his attention, and, if
> his judgment tells him that the verdict is wrong, that the
> jury have erred, either through mistake, prejudice, or
> other cause, and have found against the fair preponderance
> of the evidence, he should not hesitate to set it aside,
> and remand the question to another jury.  The trial judge
> is more than a mere moderator, passing upon the
> admissibility of the evidence, and instructing the jury as
> to the law of the case.  He, as well as the jury, must
> approve of the verdict.  The object of trials in the courts
> is to mete out justice to litigants, and unless substantial

> justice is meted out by the verdict of the jury, the judge
> should not permit it to stand.  We do not mean to say
> that he should substitute his judgment for the judgment
> of the jury, and in all cases where he might have
> reached a different conclusion upon the evidence, that he
> should grant a new trial; but where it clearly appears that
> the jury have failed to respond truly to the real merits of
> the controversy, and justice has not been done, he
> should unhesitatingly set the verdict aside.

I accept this obligation unhesitatingly.  Having presided over the entire trial, heard the

testimony, received the exhibits, and observed the demeanor of witnesses, I find that the jury has

in fact responded to the real merits of the controversy and that there has been no failure of justice,

even though I myself may have not come to the same conclusion.  Moreover, I have carefully

examined the directions of our Circuit and, in that light, I find that the jury acted properly.

### III.     Invocation of the Fifth Amendment Privilege against Self-Incrimination

Defendant's first allegation of error is that the Court improperly admitted evidence that

Defendant invoked his Fifth Amendment privilege regarding conduct that allegedly occurred while

he was still a juvenile.  Defendant claims this evidence was both inadmissible under the Federal

Rules of Evidence and that its admission violated the Due Process Clause of the Fourteenth

Amendment by imposing an arbitrary punishment on Defendant.  I find Defendant's arguments to

be without merit.

A litigant in a civil action may unquestionably assert a Fifth Amendment privilege and

refuse to reveal information properly subject to the privilege.  *Mid-America's Process Serv. v.

Ellison*, 767 F.2d 684, 686 (10th Cir. 1985); *see also United States v. Kordel*, 397 U.S. 1, 7-8

(1970).  However, a litigant asserting the privilege may have to accept certain bad consequences

that flow from that action.  *Id.*; *see Baxter v. Palmigiano*, 425 U.S. 308, 318-319 (1976).  In

particular, adverse inferences may be drawn against a party who refuses to testify in response to probative evidence offered against them. *Mitchell v. United States*, 526 U.S. 314, 327 (1999).

Jury Instruction No. 12, dealing with an individual's right to assert the Fifth Amendment privilege against self-incrimination, stated in part:

> Every citizen has a right . . . to assert the Fifth Amendment privilege to avoid furnishing evidence that might be used against him in a later criminal prosecution.  [A] person is entitled to assert his or her Fifth Amendment right to remain silent in response to questions put to him in a civil proceeding . . . Where a person asserts his Fifth Amendment rights . . . you are permitted to assume that his testimony would be unfavorable to him in any manner that you deem reasonable and supported by the evidence.

Defendant argues, however, that the jury should not have been allowed to draw an adverse inference from his assertion of the Fifth Amendment privilege.  Defendant bases this contention in part on the argument that evidence of prior conduct was irrelevant under FED. R. EVID. 415 because Defendant had admitted liability prior to the beginning of trial.

Evidence offered under Rule 415 is not admissible for the sole purpose of proving liability.[1]  As provided in FED. R. EVID. 414:

> [E]vidence of the defendant's commission of another offense . . . of child molestation is admissible, and may be considered *for its bearing on any matter to which it is relevant.*  (emphasis added).

The trial in this case dealt exclusively with a determination of the damages suffered by Plaintiff, as liability had been admitted.  Plaintiff sought both compensatory and punitive damages.  Jury

---

[1]FED. R. EVID. 415 allows for the admission of prior acts of child molestation in a civil case, "as provided in Rule 413 and Rule 414 of these rules."

Instruction No. 11 advised that punitive damages could be awarded if it was shown that:

> [D]efendant acted with malice or willfulness or with
> callous or reckless indifference to the safety or rights
> of others.  One acts willfully or with reckless
> indifference . . . when he acts in disregard of a high
> and excessive degree of danger about which he knows
> or which would be apparent to a reasonable person in
> his condition.

The prior commission of acts of sexual molestation of minors was relevant within the meaning of Rule 414 as it tended to show evidence of malice, willfulness, or reckless indifference on the part of Defendant.  The issue of prior acts of child molestation was therefore highly relevant to the issue of punitive damages and was properly admitted.

Defendant next argues that the jury is only permitted to draw an adverse inference from a defendant's silence when independent evidence exists of the fact about which the party refuses to speak.  For this argument, Defendant relies on *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995), which is distinguishable from the case presently before me.  In *LaSalle*, the Seventh Circuit held that a trial court could not base its finding that no genuine issue of material fact existed, in granting a motion for summary judgment, solely on adverse inferences drawn from the nonmovant's invocation of the Fifth Amendment.  *Id.* at 389.  In the present case, it was proper for the jury to consider Defendant's silence as one of a number of factors in assessing a penalty, and there is no indication the jury gave the invocation more weight that was warranted by the facts of the case.  *See Mitchell*, 526 U.S. at 327.

I feel compelled to address several inaccurate factual contentions made in Defendant's brief regarding assertion of the Fifth Amendment.  Defendant states the jury was improperly allowed to draw an adverse inference from assertion of the Fifth Amendment about conduct

which allegedly occurred while he was a juvenile.  This contention apparently stems from a

deposition taken of Defendant in which he was questioned about any sexual contact he had with

young children while in high school.  Given Defendant's testimony at trial however, his age during

any prior events of sexual misconduct is unclear.  Defendant was questioned by Plaintiff's counsel

as follows:

> Q:    Prior to May 8, 2002, had you sexually molested any
>       other young girls?
> A:    I'm going to plead the Fifth Amendment on that.
>
> • • •
>
> Q:    In Colorado or New Mexico, is there another little girl
>       besides these three that has been sexually molested by
>       you?
> A:    I will plead my Fifth Amendment rights on that.

Defendant argues that there was no temporal proximity between his alleged actions as a high

school student and the actions at issue in this case.  While I do not necessarily agree with this

contention, I need not consider it in detail given Defendant's trial testimony.  Defendant was

questioned about his actions prior to May 8, 2002, when he was 21 years old.  He was not

specifically questioned about actions occurring while he was a juvenile.  While it may be true that

Defendant did not have fair notice he would be punished for his actions while a juvenile, the same

cannot be said for actions which may have taken place as late as May 7, 2002.  Defense counsel

could have developed the record about prior acts further on cross-examination, but chose not to

do so.  The Court will not look behind counsel's tactical reasoning in this matter.  Thus,

Defendant's contention that the actions for which he invoked his privilege occurred when he was

a juvenile has no basis in the record and Defendant's argument on this score must be rejected.

Defendant further argues that the Court erroneously allowed the jury to consider evidence

of juvenile adjudications, by invoking FED. R. EVID. 609(d).  As already discussed, no evidence

was presented that any past acts occurred when Defendant was a juvenile, nor was any evidence

of juvenile adjudications for past sexual abuse of minors presented.  As such, Defendant's

arguments with respect to FED. R. EVID. 609(d) will be rejected as well.

Defendant also claims it was error to admit testimony regarding another child who

allegedly needed psychological treatment, as this violated the Due Process Clause.  A review of

the record reveals that no such testimony was admitted.  Plaintiff's counsel did in fact question

Defendant as to whether another young girl needed psychological treatment.  However, defense

counsel promptly objected to this question and the Court sustained counsel's objection.  As such,

the testimony which Defendant claims violated the Due Process Clause was never admitted at trial

and Defendant's argument is without merit.

### IV.    Improper Admission of Evidence regarding H.P. and A.O.

During trial, the Court allowed testimony about the effects suffered by H.P. and A.O., two

of L.S.'s classmates who were also molested by Arthur Brokop.  Specifically, the mother of H.P.

and the father of A.O. testified about physical and emotional changes in their daughters following

the molestation.  Defendant contends this testimony was unfairly prejudicial and inadmissible

under FED. R. EVID. 801, 404, 405 and 415.  Before discussing Defendant's arguments about the

admissibility of such testimony, I first note that Nathaniel Ortega testified for approximately seven

minutes and Irma Patton testified for approximately six minutes.  The Court also gave a

cautionary instruction following the testimony of Mr. Ortega and Ms. Patton and again during

jury instructions.  This cautionary instruction read as follows:

You are not to consider the testimony of Mr. Ortega or

> Mrs. Patton for any purpose other than in determining
> whether punitive damages are warranted.  You should not
> consider this testimony to determine whether it is more
> likely than not that L.S. experienced various symptoms as
> a result of Arthur Brokop's conduct towards her.

Given the length of the witnesses' testimony and the instruction twice given by the Court, any

prejudice to Defendant from this testimony was minimal at most and unlikely to have greatly

influenced the jury's verdict.  It is presumed that juries follow the instructions they receive from

the Court.  *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 2003).

Defendant first claims the admission of the parents' testimony was inadmissible hearsay

under FED. R. EVID. 801(c).  Hearsay is defined as "a statement, other than one made by the

declarant while testifying . . . offered in evidence to prove the truth of the matter asserted."  A

review of the testimony offered by the two parents refutes this contention.  The Court agrees that,

had the witnesses testified about things their daughters had said to them, essentially allowing A.O.

and H.P. to testify through them, such testimony might have constituted inadmissible hearsay.

However, the proffered testimony dealt almost exclusively with changes observed by the parents

in their daughters' behavior and physical condition following the molestation.  I have reviewed the

transcript of the parents' testimony and have been unable to find instances in which either witness

referred to "statements" made by their daughters within the meaning of the rule.  Defendant's

contention that the testimony of Mr. Ortega and Ms. Patton constituted inadmissible hearsay will

therefore be rejected.

Defendant also contends that admission of evidence regarding the emotional impact of the

molestation on A.O. and H.P. was improper under FED. R. EVID. 404, 405, and 415.  Defendant

first argues that evidence of past acts is not admissible under Rule 415 to demonstrate the results

11

of such past conduct.  Defendant states that, "some limits . . . need to be placed on . . .
admissibility [of prior bad acts] in order to ensure that the plaintiff may not 'parade past the jury a
litany of potentially prejudicial similar acts that have been established or connected to the
defendant only by unsubstantiated innuendo.'"  *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 152
(3rd Cir. 2002) (quoting *Huddleston v. United States*, 485 U.S. 681, 689 (1988)).

      This is not a case where potentially prejudicial past acts were paraded before the jury
based only upon unsubstantiated innuendo.  The "past acts" in question are arguably not past acts
at all within the meaning of Rule 415, as the molestation of A.O. and H.P. was *contemporaneous*
with the molestation of L.S.  In any event, the molestation of A.O. and H.P. was not established
by 'unsubstantiated innuendo'.  Arthur Brokop had in fact pleaded guilty to these acts during his
state criminal proceedings.

      Defendant also argues that it was unfairly prejudicial to allow testimony as to the
emotional impact of the molestation on A.O. and H.P., because the sole issue to be determined by
the jury was the amount of damages due to L.S.  As already discussed, the degree of malice and
reckless indifference evidenced by Defendant was relevant to the issue of punitive damages.  The
molestation of A.O. and H.P. was relevant to the issue of malice, willfulness, and reckless
indifference and was therefore properly admitted.

## V.    Improper Statements during Closing Arguments

      Defendant next argues that reversible error occurred when Plaintiff's counsel made
improper remarks during closing argument.  Defendant contends these remarks led the jury to
consider evidence that was excluded, inadmissible, and/or unfairly prejudicial.  Mr. Brokop argues
reversible error occurred when Plaintiff's counsel suggested the jury award education costs and

costs for a change of schools, when Plaintiff's counsel referenced an excluded video of L.S., when Plaintiff's counsel made statements about Defendant's financial condition, and when Plaintiff's counsel suggested the jury award punitive damages for conduct towards other individuals.

The Tenth Circuit has clearly stated its rule regarding improper statements during closing arguments. Only rarely will it be appropriate to set aside a judgment due to improper remarks made in closing argument. *Julander v. Ford Motor Co.*, 488 F.2d 839, 842 (10th Cir. 1973). Even when counsel's argument is improper, "the judgment should not be disturbed unless it clearly appears that the remarks in question unduly aroused the sympathy of the jury and thereby influenced the verdict." *Id.* Further, while the Court may correct error made during closing arguments even when opposing counsel has failed to object, *see Sill Corp. v. United States*, 343 F.2d 411, 421 (10th Cir. 1965), the clear preference is for counsel to object to such argument, to move for a new trial prior to the return of the verdict, or to offer a proposed corrective instruction. *Minshall*, 323 F.3d at 1285; *see also Johnson v. Nat'l Sea Products, Ltd.,* 35 F.3d 626, 631 (1st Cir. 1994) (holding that when counsel fails to make a timely objection, the issue is not preserved for appeal and review is limited to plain error).

Defendant first alleges that Plaintiff improperly argued that the jury should award education costs and costs for Plaintiff to change schools. Defendant objects to this argument on the grounds that education costs were never disclosed by Plaintiff as an item of damages. Defendant also states that the Court had previously made a ruling to exclude any evidence of damages for education costs. With respect to this supposed ruling, I can find no record of such a ruling, nor has Defendant provided the Court with a citation from the record. As it is Defendant's contention that the Court made a ruling with respect to education costs, it is Defendant's burden

to point the Court to that place in the record.  *See Tesh v. United States Postal Svc.*, 349 F.3d 1270, 1272 (10th Cir. 2003) ("It is obligatory that an appellant, claiming error by the district court . . . provide this court with the essential references to the record to carry his burden of proving error.").  This Defendant has not done.

With respect to the contention that Plaintiff never disclosed education costs as an item of damages, a review of the record refutes this claim.  The Pre-Trial Order, [Docket #75], filed March 29, 2005, claimed, "sever [*sic*] mental injury and sexual discrimination, impacting her [L.S.'s] ability to receive an education."   During trial, a number of witnesses, including Plaintiff's expert, Dr. Kliman, and several of L.S.'s schoolteachers, opined that L.S. experienced a drop in school achievement following the molestation and that L.S. had been teased and ridiculed by classmates concerning the molestation.  Plaintiff herself testified that she wished to place L.S. in a private school.  To the extent Defendant objected to any of this testimony, such objections were overruled.

A review of the testimony proffered at trial therefore reveals that Plaintiff presented evidence from several sources that the sexual abuse had adversely affected L.S.'s school performance and that it was Plaintiff's desire to place L.S. in a different school environment.  Because the jury had already been allowed to consider this element of damages, I do not believe it was improper for Plaintiff to discuss education expenses during closing arguments.  Even had I found counsel's statements to be improper, such would still not necessitate overturning the verdict, as there has been no showing that this argument unduly aroused the sympathy of the jury and thus influenced the verdict.  *Julander*, 488 F.2d at 842.  The jury in this case was instructed to base its verdict solely upon the evidence, without prejudice or sympathy.  [Docket #158;

14

Instruction #2]. Moreover, I instructed the jury on two occasions that arguments of counsel are not evidence and later that no "remarks or arguments of the attorneys . . . are to be considered by you . . . as correct statements of the law, if contrary to the law given to you in these instructions. [Id.; Instruction #28]. A central assumption of American jurisprudence is that juries follow the instructions they receive. *Castillo*, 140 F.3d at 884; *see also Marshall v. Lonberger*, 459 U.S. 422, 438 (1983).

Defendant also contends it was improper for Plaintiff's counsel to refer to a DVD recording of L.S. which had been excluded from evidence. When referencing the video, Plaintiff's counsel commented, "they wouldn't allow you folks to see it. Because they don't want the truth to come out." Defendant argues that this statement by counsel violated the hearsay rule and further was prejudicial to Defendant because it implied he was intentionally withholding evidence. Before proceeding further I note that Defendant did not object to this statement during Plaintiff's closing. While this failure does not prohibit Defendant from making his argument now, I simply note that the preference in this circuit is that any objections be made during the allegedly improper argument, or shortly thereafter. *See Minshall*, 323 F.3d at 1285.

The propriety of Plaintiff's statements about the video is open to question. In general, it is improper for counsel to comment on evidence which was excluded by the court when offered at the trial, or to suggest the impression that certain excluded evidence would have made on the jury had the court permitted counsel to introduce it. 75A Am.Jur.2d Trial § 615. A reference to excluded testimony during closing argument does not, however, automatically necessitate reversal. Counsel's comments should be viewed in light of the whole context of the case. *United States v. Young*, 470 U.S. 1, 19 (1985).

15

As the Supreme Court stated in *Young*, counsel's isolated comments during closing arguments were not prejudicial when taken in the context of the trial as a whole and in the absence of a timely objection. *Id.* at 16. In that case the Court found that although the discussion of excluded evidence during closing argument was error, such discussion was not prejudicial as it dealt with evidence that had already been made manifest to the jury. *Id.*; *see also United States v. Cunningham*, 804 F.2d 58, 64 (6th Cir. 1986). The justification for the initial ruling excluding the evidence had evaporated by closing arguments and the improper allusion to the evidence was therefore incapable of swaying the jury. *Id.*

Similarly, in the present case, the jury had already heard ample evidence concerning the contents of the excluded videotape of L.S. That videotape portrayed an interview of L.S. by Plaintiff's expert, Dr. Gilbert Kliman, in which L.S. described the molestation of herself and two of her classmates by Arthur Brokop. Counsel's stated purpose in proffering the video was to allow the jury to observe L.S.'s demeanor. During the trial, numerous witnesses, including Rebecca Sanchez, Dr. Kliman, and several of L.S.'s teachers, testified to the events surrounding the molestation of L.S. and to the subsequent physical and psychological effects of the abuse on L.S. As such, the evidence Plaintiff's counsel wished to proffer through use of the video had already been disseminated to the jury and the reference to this evidence by counsel, while improper, was unlikely to have swayed the jury and thereby prejudiced Defendant. As such, this error does not necessitate granting a new trial.

Defendant next argues that it was error for Plaintiff to refer to the amount of money paid by Defendant to his attorneys, thereby unfairly putting Defendant's financial situation at issue. Defendant also objects to this statement on the grounds that the Court had previously limited its

16

ability to proffer evidence of the Defendant's financial condition.

The Court had previously ruled on the admissibility of evidence concerning Defendant's financial situation.  This ruling came in response to Plaintiff's Motion in Limine seeking to introduce evidence of Defendant's insurance coverage.  [Docket #126].  Plaintiff's Motion was denied with the reservation that, if Defendant chose to introduce his financial condition, Plaintiff would be allowed to present evidence of Defendant's insurance coverage in rebuttal.  [Id.]

The statements about which Defendant objects include Mr. Kennedy's statement that, "Arthur Brokop has paid tens of thousands of dollars, assuredly over $100,000 to his attorneys." [Tr. at 16].  Defense counsel quickly objected to this statement and requested a cautionary instruction be given.  [Id.]  The Court then gave a cautionary instruction, reminding the jury that no such evidence had been presented.  Defendant also objects to Mr. Kennedy's next comment that, "Arthur Brokop has paid a psychologist to poke and prod at L.S., over $10,000, to sit through trial and watch witnesses . . . He's paid thousands of dollars to investigators to do background checks."  [Tr. at 17].  Defense counsel did not object to these statements during Mr. Kennedy's argument.

As previously discussed, an improper argument does not necessitate reversal unless it obviously prejudiced one of the parties.  *Smith v. Atlantic Richfield Co.*, 814 F.2d 1481, 1488 (10th Cir. 1987).  With respect to prejudice stemming from the statement about Defendant's attorney fees, the Court instructed the jury to disregard that statement as no evidence had been presented to support it.  Defendant has presented no evidence to indicate that the jury failed to follow the Court's instructions.  *See Tesh*, 349 F.3d at 1272.  Additionally, while not fatal to Defendant's argument here, Defendant did not object to counsel's comments about physicians'

and investigators' fees.  Although the Court is not aware of evidence being presented regarding investigators' fees, evidence was adduced about the fees paid to Defendant's expert witness, Dr. Thompson.  As testimony had been presented regarding such fees, I do not believe it was unfairly prejudicial for Plaintiff's counsel to mention such fees during closing argument.

Defendant also objects to counsel's statements on the grounds that he had been limited in his ability to place his financial condition into evidence and contends Plaintiff's statements contradict the Court's ruling.  Defendant's arguments misapprehend the nature of that ruling.  In deciding Plaintiff's Motion in Limine, the Court held that Plaintiff was prohibited from introducing evidence of Defendant's insurance coverage.  [Docket #126].  The Court went on to rule that Plaintiff would be allowed to introduce such evidence *in the event* Defendant put his financial condition at issue. [Docket #126]  The Court did not rule that Defendant was not allowed to present evidence of his financial condition or that Plaintiff was prohibited from introducing evidence about litigation expenses.  Plaintiff did not therefore violate the Court's order and Defendant's allegations that counsel's comments constituted reversible error will be denied.

Defendant's final contention of improper statements during closing arguments relates to Plaintiff's references to Defendant's molestation of two girls besides L.S.  Defendant argues this was improper because it encouraged the jury to punish him for conduct not at issue in this case. The punitive damage instruction given by the Court reads in part:

> The amount of an award of punitive damages must not
> reflect bias, prejudice, or sympathy toward any party . . .
> so punitive damages should be awarded only if defendant's
> misconduct . . . is so reprehensible as to warrant the
> imposition of further sanctions to achieve punishment

or deterrence.  [Instruction #11].

Pursuant to this instruction, the jury was well within its discretion to consider Defendant's actions as to the two other girls in considering a punitive damages award.  These considerations go to the reprehensibility of Defendant's conduct, which is precisely what the jury instructions directed the jury to consider.  The Court had previously allowed testimony about the molestation of the other girls to permit the jury to consider the reprehensibility of Defendant's conduct.  As such, it was not improper for Plaintiff's counsel to suggest this conduct be considered in determining punitive damages.  Defendant's motion regarding Plaintiff's closing arguments will therefore be **DENIED**.

## VI.    Compensatory Damage Award not Supported by Evidence

Defendant further contends that there is no competent evidence to support the jury's award of $1,200,000 in compensatory damages.  Specifically, he argues that the only damages the jury could properly consider were expenses for past and future medical care and for pain and suffering.  Defendant claims that the evidence adduced at trial showed the medical expenses to be around $100,000 at most.[2]  He therefore argues that the remaining $1,100,000 in compensatory damages was necessarily awarded for pain and suffering and that there was no evidence to support such an award.  Defendant concludes that the only explanation for the jury's decision regarding compensatory damages is that they were inflamed by passion or prejudice by the nature of the act of molestation.

I disagree with the contention that the jury's award of compensatory damages was

---

[2]Although Defendant contends the medical bills would total only $100,000, I note that there was significant difference of opinion among the experts as to what medical and psychiatric care L.S. was likely to need in the future.  I also note that testimony was adduced, which I have already determined was properly admitted, regarding educational expenses.

necessarily based on passion or prejudice.  Defendant cites *Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1262 (10th Cir. 1995), for the proposition that "plainly excessive damages . . . may support an inference that bias, passion, or prejudice contributed to the award." The compensatory damage awards were overturned in several of the cases cited by Defendant. However, in all these cases the Tenth Circuit emphasized that the reasonableness of a damages award will necessarily depend upon the evidence presented and the particular facts of the case at hand.  *See Wulf v. City of Wichita*, 883 F.2d 842, 874-75 (10th Cir. 1989) ("[A]bsent an award so excessive or inadequate as to . . . raise an *irresistible* inference that passion, prejudice or another improper cause invaded the trial, the [court's] determination of the amount of damages is inviolate") (emphasis added).[3]

The jury in this case heard testimony that L.S. would suffer the effects of the molestation for a significant period, possibly for the rest of her life.  L.S. was six years old at the time she was molested by Arthur Brokop.  When one considers a normal life span, it is clear that L.S. may suffer with the effects of Mr. Brokop's actions for a number of decades.  While Defendant points to testimony that L.S. is currently doing better, the jury heard testimony from Dr. Kliman, which they were entitled to credit, that L.S. will likely experience problems during adolescence, when she gets married, when she has children, etc.  I find that the jury's compensatory damages award was reasonable under the circumstances and discredit Defendant's argument that, because the award was large, the jurors were necessarily motivated by prejudice rather than by a careful

---

[3]*See Fitzgerald*, 68 F.3d at 1265 (overturning award of $250,000 for emotional distress where no treating physicians or psychologists testified and both Plaintiffs continue to work in their chosen field.  *See also Wulf*, 883 F.2d at 875 (overturning award of $250,000 for mental anguish where Plaintiff and his wife testified that his job loss was stressful, but presented no other evidence of emotional suffering).

analysis of the facts presented.

Defendant also claims the jury was prejudiced by erroneous evidentiary rulings by this Court. Specifically, he faults the admission of certain testimony of Dr. Gilbert Kliman and Rebecca Sanchez. Mr. Brokop claims that the testimony of Rebecca Sanchez regarding any pain and suffering experienced by L.S. was inadmissible hearsay. He also claims that Dr. Kliman's testimony exceeded the bounds of Rule 703 and constituted inadmissible hearsay which prejudiced the jury and led to an unsupported award of compensatory damages.

Turning first to the testimony of Rebecca Sanchez, Defendant does not explain how he was prejudiced by her testimony, but merely asserts, "Any testimony of her [L.S.'s] mother regarding pain and suffering being experienced by the Plaintiff was inadmissible hearsay." Mr. Brokop does not explain which portions of Rebecca Sanchez's testimony he finds objectionable. As previously discussed, it is the movant's burden, when making claims of error, to point the Court to those places in the record where he feels error occurred. *Tesh*, 349 F.3d 1272. Nevertheless, I will discuss Defendant's argument.

Rebecca Sanchez's testimony was extensive and dealt not only with oral statements made to her by L.S., but also with her observations of her daughter's behavior following the molestation, including difficulties L.S. began to have with interpersonal relationships, particularly with males, including young boys. The majority of this testimony, based on Ms. Sanchez's observations of her daughter was certainly not hearsay and was admissible. The question before the Court is whether it was improper to admit statements made by L.S. to her mother concerning the molestation and her mental state in general.

The Tenth Circuit has previously held similar testimony to be admissible under the residual

hearsay exception of FED. R. EVID. 807 (formerly Rule 803(24)).  *See United States v. Farley*, 992

F.2d 1122, 1125 (10th Cir. 1993).  The residual exception to the hearsay rule makes admissible:

> A statement . . . having . . . circumstantial guarantees
> of trustworthiness . . . if the court determines that (A)
> the statement is offered as evidence of a material fact;
> (B) the statement is more probative on the point for
> which it is offered than any other evidence . . .and (C)
> the general purposes of these rules and the interests of
> justice will best be served by the admission of the
> statement into evidence.

While Rule 807 does contain a notice requirement, there is no indication that Defendant was

unaware of how Rebecca Sanchez would testify at trial.  Her deposition was taken by Defendant

on at least one occasion and Mr. Brokop was advised in the Pre-Trial Order of the likely contents

of her testimony.  [Docket #75].  I find that Defendant was not without notice within the meaning

of Rule 807 and that he had a fair opportunity to prepare to meet Rebecca Sanchez's testimony.

In *United States v. Farley*, the Tenth Circuit held that, although the mother's testimony

consisted largely of her daughter's account of the sexual abuse, there were sufficient

circumstantial guarantees of trustworthiness to allow the testimony.  *Farley*, 992 F.2d at 1125.

"[I]f the declarant's truthfulness is so clear from the surrounding circumstances that the test of

cross-examination would be of marginal utility, then the hearsay rule does not bar admission of

the statement at trial." *Idaho v. Wright*, 497 U.S. 805, 820 (1990).  In *Wright*, the Supreme

Court identified several factors that courts should consider in determining "whether hearsay

statements made by a child witness in child sexual abuse cases are reliable." *Id.* at 821.  Among

these were the spontaneity of the statement, the consistent repetition of the allegation by the child,

the mental state of the child, the use of terminology unexpected in a child of similar age, and the

lack of a motive to fabricate. *Id.*; *see also United States v. Tome*, 61 F.3d 1446, 1452 (10th Cir. 1995).

In analyzing the trustworthiness of L.S.'s statements to Rebecca Sanchez, I note that L.S. made many of the statements to her mother while still suffering acute distress from the molestation. *See Farley*, 992 F.2d at 1126. Even with respect to statements made some time after the molestation occurred, (regarding feelings of sadness, worthlessness and anxiety), L.S.'s youth greatly reduced the likelihood that reflection and fabrication were involved in these statements. *Id.* Further, the statements were probative, as they were the account of the victim herself, and were material to the issue of damages, particularly those damages which the jury was allowed to award for pain and suffering. Additionally, I note that there was ample evidence of damages adduced at trial based only on Ms. Sanchez's observations of L.S.'s behavior. From listening to Ms. Sanchez's testimony, I am not convinced that the admission of L.S.'s statements added a great deal to that testimony such that Defendant was prejudiced by it.

For many of the same reasons, I also believe Rebecca Sanchez's testimony would have been admissible as evidence of then existing mental, emotional, or physical condition. FED. R. EVID. 803(3). The rule allows for the introduction of evidence of the declarant's "then existing state of mind, emotional, sensation, or physical condition (such as . . . mental feeling, pain, and bodily health)." *Id.* The mental and emotional condition of L.S. was highly probative of and material to the issue of damages. I find therefore that Rebecca Sanchez's testimony as to L.S.'s emotions and general mental condition was also properly admitted under Rule 803(3).

Turning to the testimony of Plaintiff's expert, Dr. Kliman, Defendant argues that his testimony about L.S.'s subjective experiences was more prejudicial than probative of any material

fact, and as such, was inadmissible under FED. R. EVID. 703.  Mr. Brokop also argues that Dr.

Kliman's testimony regarding L.S.'s subjective experiences constituted inadmissible hearsay.  Dr.

Kliman's testimony was admitted under FED. R. EVID. 703, which allows an expert to testify as to

the basis of his opinion.[4]  Defendant has provided no evidence, besides several contrary

conclusions of his own expert witness, Dr. Thompson, to indicate that Dr. Kliman's opinions were

not based upon data or methodology reasonably relied upon by experts in the field of psychiatry.

Even assuming, as Mr. Brokop contends, that Dr. Kliman's opinions were based upon

hearsay, it does not follow that the testimony offered by Dr. Kliman was inadmissible and

erroneously presented to the jury.  An expert witness may base his opinion on otherwise

inadmissible evidence, and such evidence may be disclosed to the jury when the Court determines

its probative value outweighs its prejudicial effect.  FED. R. EVID. 703.  I evaluated the probative

value of Dr. Kliman's testimony and its likely prejudicial effect and determined that it was

necessary for the jury to hear what L.S. had said in order to properly evaluate the witness's

diagnosis.  Dr. Kliman's testimony about what L.S. had said was therefore admissible for

purposes of rule 703.

Hearsay statements made to Dr. Kliman by L.S. would additionally be admissible under

FED. R. EVID. 803(4), which allows the admission of hearsay statements made for purposes of

medical diagnosis and treatment.  Defendant contends this exception should not be available

because Dr. Kliman was not L.S.'s treating physician.  Dr. Kliman acted primarily as a consulting

physician for purposes of diagnosing L.S. and assessing her symptoms.  The Tenth Circuit has

---

[4]I note that, despite awareness of Plaintiff's intent to call Dr. Kliman at trial and of the likely contents of
his testimony as found in his expert report and deposition, Defendant at no time prior to trial moved for exclusion
of Dr. Kliman's testimony on the grounds that the testimony was unreliable under FED. R. EVID. 703.

held that allowing such a witness to testify pursuant to Rule 803(4) is still proper because "Rule 803(4) 'abolished the [common-law] distinction between the doctor who is consulted for the purpose of treatment and an examination for the purpose of diagnosis only: the latter usually refers to a doctor who is consulted only in order to testify as a witness.'" *Farley*, 992 F.2d at 1125 (quoting *Morgan v. Foretich*, 846 F.2d 941, 950 (4th Cir. 1988) (quoting *United States v. Iron Shell*, 633 F.2d 77, 93 (8th Cir. 1980), *cert. denied*, 450 U.S. 1001 (1981))).  Additionally, I note that Defendant had the opportunity to cross-examine Dr. Kliman for approximately three hours.  Defendant therefore had ample opportunity to present the fact that Dr. Kliman had a more limited knowledge of L.S. than would a treating physician.

In a factually similar case, the Tenth Circuit held that the statements of a child victim of sexual abuse were admissible under Rule 803(4) when offered through the testimony of consulting physicians.  *Tome*, 61 F.3d at 1449-51.  The Court in *Tome* allowed Dr. Kuper, a pediatrician who examined the child victim on two occasions, Dr. Reich, who examined the child on one occasion, and Dr. Spiegel, a professor of pediatrics who examined the child on one occasion, to testify as to statements made by the child.  *Id.*  The Court allowed this testimony on the grounds that the child's statements were "reasonably pertinent" to the diagnosis and determination of her condition.  *Id.*[5]

Similarly, in the present case, Dr. Kliman's testimony about L.S.'s symptoms was properly presented to the jury.  Despite Defendant's argument that there was no reliable evidence to support Dr. Kliman's testimony, the jury was instructed on the weight to be given an expert

---

[5]*Tome, Farley*, and *Wright* were criminal cases where presumably the court would have been more careful in permitting such testimony than in a civil case.

opinion.  [Docket #158; Instruction #20].  The jury clearly found that Dr. Kliman's testimony was credible and supported by the evidence, and it is the province of the jury to make such a decision. *United States v. Downen*, 496 F.2d 314, 319 (10th Cir. 1974) ("Jurors are charged with the duty of assessing the credibility of witnesses and determining the weight to be given any testimony taking into consideration the appearance and general demeanor of each and every witness.").  As such, I find that the testimony of Rebecca Sanchez and Dr. Kliman was not inadmissible hearsay and was properly presented to the jury and that, given the entirety of the testimony adduced at trial, the award of $1,200,000 in compensatory damages was not unreasonable.[6]

### VII.    Punitive Damages Award was Excessive and Violative of Due Process

Mr. Brokop next argues that the punitive damages award in this case was excessive and violated his right to due process because, as discussed above, the Court admitted improper evidence about the Defendant's conduct towards other students in L.S.'s first-grade class.  Mr. Brokop also argues that, because the compensatory damages award was grossly excessive, the punitive damage award, once compensatory damages have been properly remitted, will be similarly excessive.

I have already analyzed the compensatory damage award in this case and have found it to have been reasonable under the circumstances, such that remittur of compensatory damages is not necessary.  I must therefore consider whether, given the appropriateness of the compensatory damage award, the award of $2,000,000 in punitive damages is still excessive.  The Supreme Court has developed a three-prong test for analyzing a punitive damage award.  This Court must

---

[6]The compensatory damages award of $1.2 million is also supported by the testimony of Dr. Kliman that L.S. will likely be affected by the molestation for many years.

consider: 1) the degree of reprehensibility of the defendant's misconduct; 2) the disparity between the actual harm suffered by the plaintiff and the punitive damages award; and 3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (citing *BMW v. Gore*, 517 U.S. 559, 575 (1996)); *Hampton v. Dillard's Dep't Stores, Inc.*, 247 F.3d 1091, 1116 (10th Cir. 2001).

Defendant admits in his Motion that his conduct was "reprehensible."  When assessing the reprehensibility of an individual's conduct with reference to punitive damages, the Supreme Court has outlined several factors that courts must consider.  These include: 1) whether the harm caused was physical, as opposed to economic; 2) whether the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others; 3) whether the target of the conduct had financial vulnerability; 4) whether the conduct involved repeated actions or was an isolated incident; and 5) whether the harm resulted from intentional malice, trickery, or deceit, or from mere accident.  *Campbell*, 538 U.S. at 419.  Defendant is correct that any one of the above factors, "weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect."  *Id.*

I have already discussed and will reiterate here that this is not a case where none of the listed factors were present, or even where only one of the above factors existed.  Turning to the five factors outlined in *Campbell*, the evidence suggested and the jury could have found that L.S. suffered physical, rather than economic, harm, that the tortious conduct of criminal sexual contact involved an indifference and reckless disregard of L.S.'s health and safety, that L.S. was financially vulnerable, and that Arthur Brokop's actions were not accidental, but involved

27

intentional malice.  *Id.*  With respect to the fourth *Campbell* factor, it is arguable that Defendant's

conduct towards L.S. did not constitute an isolated incident because it is undisputed that he

engaged in the same tortious conduct towards two other girls, H.P. and A.O.  Therefore, I find it

was appropriate for the jury to find Mr. Brokop's conduct to be highly reprehensible within the

meaning of *Gore*.  *Gore*, 517 U.S. at 575.

Regarding the second and third *Gore* factors, the jury heard testimony that the actual harm

suffered by L.S. was extensive and that it was likely L.S. would suffer the effects of the

molestation for a considerable period.  While a number of witnesses indicated that L.S.'s mental

condition appears to be improving, the jury also heard testimony that the molestation by Arthur

Brokop would likely affect L.S. throughout her life.

Additionally, Defendant Arthur Brokop testified at trial.  The jurors were able to observe

his demeanor and body language both on direct and on cross-examination.  It is clear to the court

that Defendant's very manner while testifying may have influenced the jury with respect to the

punitive damages award.  Certainly, the jury is permitted to not only weigh the evidence presented

to it, but is free to evaluate the testimony in light of all the surrounding circumstances.  *United

States v. Castorena-Jaime*, 285 F.3d 916, 932-33 (10th Cir. 2002).  Given such testimony, I do

not believe there was a great disparity between the harm suffered and the punitive damages

award.

With respect to the penalties authorized in comparable cases, I will first address

Defendant's argument regarding 42 U.S.C. § 1981a.  Defense counsel argued in his motion that,

because § 1981a provides for caps on compensatory and punitive damages, and because § 1981a

is a comparable statute to §§ 1981 and 1983, this Court should consider the provisions of § 1981a

in determining the appropriateness of the punitive damages award.  The Tenth Circuit has

previously declined to make such a comparison.  The Court noted, "Section 1981 does not have a

statutory cap that limits punitive damages as does Title VII."  *Hampton*, 247 F.3d at 1099.[7]  *See*

*also Bogle v. McClure*, 332 F.3d 1347, 1362 (11th Cir. 2003) ("Congress has not seen fit to

impose any recovery caps in cases under § 1981 (or § 1983), although it has had ample

opportunity to do so since the 1991 amendments to Title VII.").

   Turning to the actual award, I have already determined that the compensatory damages

award was proper and need not be remitted.  In *Gore*, the Supreme Court indicated that a

damages ratio of more than single digits might be suspect.  *Gore*, 517 U.S. at 581.  Both the

Supreme Court and the Tenth Circuit have found, however, that "where the injury is primarily

personal, a greater ratio [than 10:1] may be appropriate."  *Hampton*, 247 F.3d at 1117 (upholding

a punitive damages ratio of approximately 20:1).  In the present case, the ratio of punitive

damages to compensatory damages is less than 2:1.  Additionally, the Tenth Circuit has held that,

"even where a persuasive explanation of the jury's damages award indicates an award contrary to

law, the possibility of a proper explanation, however slight the chance, will suffice to sustain the

damages award."  *Hardeman*, 377 F.3d at 1123 (quoting "*Telecor Commc'ns, Inc. v. Sw. Bell*

*Tel. Co.*, 305 F.3d 1124, 1143 (10th Cir. 2002)).  In this case, there is more than a mere

possibility that the punitive damages award was properly intended "to punish what had occurred

and to deter its repetition."  *Id.* (quoting *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1309 (10th

---

[7]*Hampton* involved a claim under 42 U.S.C. § 1981 for interference with the right to make and enforce a contract.  *Id.* at 1098.  The district court found that Plaintiff's race was a deciding factor in Dillard's refusal to provide her with a free cologne sample.  *Id.*  The Tenth Circuit subsequently upheld a punitive damages award of $1.1 million.

Cir. 2003)).  For these reasons, I reject Defendant's argument that the jury's award of punitive damages was excessive and violated his right to due process.

### VIII.   Jury Instructions did not Properly Guide Deliberations

Finally, Mr. Brokop contends that the jury instructions were erroneous and improperly guided the jury in its deliberations on punitive damages.  Specifically, Defendant argues that because the jury had no clear understanding of his financial capacity, it could not properly determine the amount that would be necessary to punish him and to deter him and others from similar conduct in the future.  Defendant also contends it was error for the Court to refuse to instruct the jury to consider the financial impact to the Defendant if punitive damages were awarded.

When reviewing jury instructions, I must consider "all the jury heard, and from the standpoint of the jury, decide not whether the charge was faultless in every particular, but whether the jury was misled in any was and whether it had understanding of the issues and its duties to determine these issues."  *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1250 (10th Cir. 2000) (quoting *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1549 (10th Cir. 1993)).  An erroneous jury instruction requires reversal "only if [there is] substantial doubt whether the instructions, taken together, properly guided the jury in its deliberations."  *Id.* (quoting *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 468 (10th Cir. 1990)).

With respect to Defendant's contention that the Court failed to properly instruct the jury, I disagree that any such failure to instruct occurred.  While the Court did not give a separate instruction about Defendant's financial resources, as Defendant requested, the Court's punitive damage instruction contained the following clause: "You may consider the financial resources of

30

the defendant in fixing the amount of punitive damages." [Docket #158; Instruction #11].  For all practical purposes, the instruction which Mr. Brokop claims was omitted was in fact presented to the jury for their deliberations, albeit in the context of a different instruction.

Regarding the argument that the jury had no clear understanding of Mr. Brokop's financial capacity, I find defense counsel's argument to be rather disingenuous.  Defendant, despite what he claims earlier in his brief, was never barred by the Court from introducing evidence of his finances.  The Court held prior to trial, in response to Plaintiff's Motion in Limine, that Plaintiff would not be allowed to introduce evidence of Defendant's insurance coverage and the employer indemnification statute.  However, the Court also held that, in the event Defendant chose to introduce evidence of his financial condition, Plaintiff would be allowed to use the fact of Defendant's insurance coverage in rebuttal.  Defendant could easily have introduced evidence of his finances but chose not to do so, presumably because he did not want the jury to be aware of his insurance coverage.  At no time however did the Court *prohibit* Defendant from introducing financial evidence.[8]

Additionally, the Tenth Circuit has clearly held that it is the Defendant's burden, not the Plaintiff's, to present evidence of his financial condition to establish the propriety of punitive damages.  *Mason v. Oklahoma Turnpike Auth.*, 182 F.3d 1212, 1214 (10th Cir. 1999).  Defendant neglected to present evidence of his financial condition, despite the knowledge that the jury would most likely be allowed to consider an award of punitive damages.  Defense counsel's failure to present appropriate evidence is no indication that this Court committed error.

---

[8]Since no evidence of insurance coverage was offered or admitted at trial, the Court was never called upon to rule on how the jury should be instructed with regard to said coverage.

Defendant argues in his motion that the jury's understanding of his financial capacity was especially important because "the punitive award is paid by the school district not the individual under § 41-4-1(D). This shifting of payment makes it imperative that the financial wealth of the individual be considered." Defendant does not explain why, if the punitive damages award is to be paid by someone other than himself, it is imperative that the jury consider his personal financial condition. In any event, Defendant had the burden of providing evidence of his financial capacity and had ample opportunity to do so during trial. The fact that he chose not to present such evidence does not render this Court's rulings erroneous. As such, Defendant's argument that the jury instructions did not properly guide deliberations will be denied.

## IX.     Conclusion

Upon review of the arguments presented in Defendant's Motion for Judgment as a Matter of Law or for New Trial or to Alter or Amend Judgment, I find that Defendant has not shown that he meets the outlined standards for any of the requested relief. As such, Defendant's Motion will be **DENIED** in its entirety.

**IT IS SO ORDERED**.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**